IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GABRIELLE JOHNSON, | : |
| *Plaintiff*, | : |
| v. | : Case No.: 2:25-cv-01790 |
| WOMEN'S CENTER AND SHELTER OF GREATER PITTSBURGH, | : |
| | : **JURY TRIAL DEMANDED.** |
| *Defendant.* | : |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Gabrielle Johnson, by and through the undersigned counsel, J.P. Ward & Associates, LLC, and, specifically, Justin M. Bahorich, Esquire, who files the within Complaint against Defendant, Women's Center and Shelter of Greater Pittsburgh, of which the following is a statement:

## PARTIES

1. Plaintiff, Gabrielle Johnson (hereinafter "Ms. Johnson" or "Plaintiff"), is an adult individual who currently resides in Allegheny County, Pennsylvania.

2. Defendant, Women's Center and Shelter of Greater Pittsburgh (hereinafter "Defendant"), is a Pennsylvania nonprofit corporation with a principal address at 2760 Centre Avenue, Pittsburgh, PA 15213.

## JURISDICTION AND VENUE

3. Jurisdiction is proper as Ms. Johnson brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000e *et seq*.) and the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981).

1

4.  Venue is proper in the Western District of Pennsylvania under 28 U.S.C. § 1391(b) in that this is the district in which the claims arose.

5.  On January 22, 2025, Ms. Johnson timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

6.  On August 21, 2025, the EEOC issued a Notice of Right to Sue.

7.  Ms. Johnson has exhausted all her administrative remedies under Title VII.

8.  Plaintiff intends to file an Amended Complaint upon completion of the PHRC's one-year investigation on or after January 22, 2026.

## FACTUAL ALLEGATIONS

9.  On or about January 2, 2024, Ms. Johnson began working for Defendant as an Educational Facilitator.

10. At all times relevant, Ms. Johnson is a member of a protected class in that she is an African American female.

11. At all times relevant, Ms. Johnson was qualified for her position, holding more than twenty-four (24) certificates of training relevant to domestic violence prevention, community education, and trauma-informed care.

12. Ms. Johnson reported directly to Director of Education and Training Matthew Grayson ("Mr. Grayson"), who supervised and evaluated her work.

13. Another employee, Amy Burleson ("Ms. Burleson"), a white woman, held the same title as Ms. Johnson and reported to the same supervisor, as well.

14. Throughout January and February 2024, Ms. Johnson completed required training and performed her job duties as directed.

15. During this time, Mr. Grayson began comparing Ms. Johnson unfavorably to Ms. Burleson, frequently praising Ms. Burleson while criticizing Ms. Johnson in front of her.

16. Mr. Grayson also directed work assignments through Ms. Burleson instead of communicating directly with Ms. Johnson, which hindered Ms. Johnson's ability to complete tasks efficiently.

17. On or about February 26, 2024, after Ms. Johnson gave a mock educational presentation, Mr. Grayson stated, "These are inner-city Black kids, so dumb it down."

18. Ms. Johnson was offended by Mr. Grayson's remark, which she understood to stereotype Black students and to reflect racial bias.

19. When Ms. Johnson questioned the comment, Mr. Grayson dismissed her concern and said it was intended as feedback.

20. The next day, on or about February 27, 2024, during a performance-review meeting, Mr. Grayson told Ms. Johnson, "Because you are a Black woman, the world is going to look at you differently compared to your white counterparts. If you slip in any way, it will be looked at differently than other people."

21. Mr. Grayson concluded the discussion by stating, "In the real world or anywhere else, they would have gotten rid of you by now."

22. Defendant has since acknowledged that Mr. Grayson made a statement referring to Ms. Johnson as "a Black woman," though it characterized the remark as professional guidance rather than discriminatory.

23. In or around March 2024, Ms. Johnson and Ms. Burleson jointly sent an email to the wrong department.

24. Although Ms. Burleson admitted responsibility, Mr. Grayson blamed only Ms. Johnson.

25. Later that month, Mr. Grayson again faulted only Ms. Johnson for an error on a shared assignment with Ms. Burleson.

26. As a result, Ms. Burleson told Mr. Grayson that his treatment of Ms. Johnson was making her uncomfortable.

27. Shortly thereafter, Mr. Grayson canceled Ms. Johnson's scheduled supervision meeting and stopped providing feedback on her work.

28. On or about April 2, 2024, Ms. Johnson submitted a written complaint to Mr. Grayson's supervisor, Rhonda Fleming ("Ms. Fleming"), and to Human Resources Representative Allison Kaemar ("Ms. Kaemar").

29. In her complaint, Ms. Johnson described Mr. Grayson's racially charged statements and disparate treatment and requested reassignment to another supervisor.

30. Defendant acknowledged receipt of Ms. Johnson's complaint and initiated an internal review.

31. Upon information and belief, the review consisted of brief interviews with Mr. Grayson and Ms. Burleson and concluded that the allegations could not be substantiated.

32. On or about April 4, 2024, Defendant's President and Chief Executive Officer Nicole Molinaro ("Ms. Molinaro") met with Ms. Johnson.

33. During the meeting, Ms. Molinaro stated that Mr. Grayson's remarks would not be considered misconduct and informed Ms. Johnson that her employment was terminated for "poor performance."

34. Ms. Johnson had received no prior written discipline or warnings before her termination.

35. However, Ms. Johnson's termination letter contained several incorrect dates and references to meetings that did not occur.

36. When Ms. Johnson identified these errors, Defendant declined to amend or reconsider its decision.

37. Upon information and belief, Defendant's stated reasoning for terminating Ms. Johnson's employment was false and pretextual, as her termination occurred only two days after she engaged in protected activity by reporting racial discrimination.

## COUNT I
## DISCRIMINATION ON THE BASIS OF RACE
## IN VIOLATION OF TITLE VII

38. Ms. Johnson incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

39. Under Title VII, it is illegal for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. §2000e-2(a)(1).

40. When analyzing a claim of discrimination under Title VII, a plaintiff must show: "(1) she is a member of a protected class; (2) she was qualified for the position he sought to attain or retain; (3) she suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Langley v. Merck*

*& Co.*, 186 Fed Appx. 258 (3d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). See also *Makky v. Chertoff*, 542 F.3d 205, 214 (3d Cir. 2008).

41. Pennsylvania courts have determined that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Serv.*, 390 F.3d 760, 764 (3d Cir. 2004)).

42. In *Muldrow v. City of St. Louis*, the United States Supreme Court held that a Plaintiff claiming discrimination can establish an adverse employment action through evidence of "*some injury* respecting his employment terms or conditions" and that the injury "left him worse off, but need not have left him *significantly so*." 601 U.S. 346, 359 (2024) (emphasis added).

43. Under Title VII, for other employees to be considered "similarly situated," they must have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Morales v. PNC Bank, N.A.*, 2012 U.S. Dist. LEXIS 143605 *23 (E.D. Pa. 2012).

44. Pennsylvania courts have held that comparison factors for "similarly situated employees" have included "dealing with the same supervisor, having been subject to the same standards, and engaging in the same conduct without differentiating and mitigating circumstances." *Id.*

45. Ms. Johnson is an African-American woman and therefore a member of a protected class under Title VII.

46. Ms. Johnson was qualified for her position and performed her job duties as directed throughout her employment.

47. During her employment, Ms. Johnson was subjected to race-based differential treatment by Mr. Grayson, including unwarranted criticism, exclusion from communications, and racially charged comments.

48. Mr. Grayson favored Ms. Johnson's white coworker, Ms. Burleson, by routing assignments through her, praising her performance, and faulting only Ms. Johnson for shared mistakes.

49. Despite Ms. Johnson's complaints to management and HR regarding this disparate treatment, Defendant failed to take corrective action.

50. On April 4, 2024—two days after Ms. Johnson reported racial discrimination—Defendant terminated her employment, citing "poor performance."

51. Similarly situated white employees were not subjected to the same scrutiny, criticism, or termination for comparable work performance.

52. These actions occurred under circumstances giving rise to a strong inference of intentional racial discrimination.

53. Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

54. As a direct and proximate cause of the aforementioned conduct, Ms. Johnson suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Plaintiff, Gabrielle Johnson, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant, including, back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

**COUNT II**
**HOSTILE WORK ENVIRONMENT ON THE BASIS OF RACE**
**IN VIOLATION OF TITLE VII**

55. Ms. Johnson incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

56. The protections established by Title VII include "protection against a hostile work environment that is abusive to an employee on the basis of his or her race." *Bryant v. Wilkes-Barre Hosp., Co., LLC*, 146 F. Supp. 3d 628, 645 (M.D. Pa. 2015).

57. In order to establish a hostile work environment claim, a plaintiff must show that: "(1) she suffered intentional discrimination because of race and/or national origin; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) the existence of vicarious or Defendant superior liability." *Senador* at *25 (citing *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001)).

58. The United States Supreme Court "has held that when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII . . . is violated." *Washington v. Martinez*, 2004 U.S. Dist. LEXIS 4325 at *16 - *17 (E.D. Pa. 2004).

59. Courts have held that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Washington* at *17 - *18 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 22 (1993)).

8

60. Conditions that create a hostile working environment "may constitute a significant change in benefits and establish the adverse action necessary to state a prima facie case of discrimination." *Washington* at *17.

61. Ms. Johnson was subjected to a racially hostile work environment created and perpetuated by Mr. Grayson, who repeatedly made racially charged remarks regarding African-Americans.

62. Mr. Grayson repeatedly compared Ms. Johnson unfavorably to her white coworker, Ms. Burleson, blamed Ms. Johnson for shared mistakes, and excluded her from direct communication by routing assignments through Ms. Burleson.

63. The racially discriminatory conduct caused Ms. Johnson to experience anxiety, humiliation, and loss of confidence in her workplace standing.

64. Ms. Johnson reported Mr. Grayson's racially charged comments and disparate treatment to Defendant's management and HR representatives, but no corrective action was taken.

65. Two days after Ms. Johnson's report of racial discrimination, Defendant terminated her employment rather than addressing her concerns.

66. The conduct directed at Ms. Johnson was pervasive and severe enough to alter the conditions of her employment. A reasonable person in her position would have found the environment hostile and abusive.

67. Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

68. As a direct and proximate cause of the aforementioned conduct, Ms. Johnson suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Plaintiff, Gabrielle Johnson, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant, including, back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

### COUNT III
### RETALIATION ON THE BASIS OF RACE
### IN VIOLATION OF TITLE VII

69. Ms. Johnson incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

70. Title VII makes it unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

71. To establish a *prima facie* case of retaliation under Title VII, a plaintiff must provide evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. *Kengerski v. Allegheny Cty.*, 435 F. Supp. 3d 671, 676 (W.D. Pa. 2020) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 341-42 (3d Cir. 2006)).

72. Ms. Johnson engaged in protected activity when she reported to management and HR that Mr. Grayson had made racially charged comments and treated her less favorably than her white coworker.

73. Rather than taking corrective action or reassigning Ms. Johnson as requested, Defendant dismissed her complaint as unsubstantiated and allowed Mr. Grayson to continue in his supervisory role.

74. Two days later, on April 4, 2024, Defendant terminated Ms. Johnson's employment, citing "poor performance."

75. The close temporal proximity between Ms. Johnson's protected complaint and her termination, coupled with Defendant's failure to take remedial action against Mr. Grayson, supports a strong inference of retaliatory intent.

76. Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

77. As a direct and proximate cause of the aforementioned conduct, Ms. Johnson suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Plaintiff, Gabrielle Johnson, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant, including, back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

**COUNT IV**
**DISCRIMINATION**
**IN VIOLATION OF SECTION 1981**

78. Ms. Johnson incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

79. 42 U.S.C. § 1981(a) provides that:

> "[a]ll persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts, to sue, be parties,

give evidence, and to the full and equal benefit of all laws …as is enjoyed by white citizens."

*Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975) (holding that Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race."); *see also*, *Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 140 S. Ct. 1009, 1010 (2020).

80. Thus, Section 1981 prohibits employers from engaging in intentional racial discrimination.

81. Ms. Johnson is an African-American woman and therefore a member of a protected class under Section 1981.

82. Ms. Johnson was qualified for her position and performed her job duties as directed throughout her employment.

83. During her employment, Ms. Johnson was subjected to intentional racial discrimination by Mr. Grayson, who made racially charged comments.

84. Mr. Grayson treated Ms. Johnson more harshly than her white coworker, Ms. Burleson, by blaming her for shared errors, excluding her from communication, and criticizing her work publicly while praising Ms. Burleson.

85. On April 2, 2024, Ms. Johnson reported this discriminatory treatment to management and HR. Two days later, on April 4, 2024, Defendant terminated her employment, citing "poor performance."

86. Similarly situated white employees were not subjected to the same scrutiny, criticism, or termination for comparable work performance.

87. Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

88. As a direct and proximate cause of the aforementioned conduct, Ms. Johnson suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Plaintiff, Gabrielle Johnson, hereby requests this Honorable Court consider the above and grant relief in her favor and against Defendant, including an award of back pay, front pay, compensatory and punitive damages, costs and reasonable attorney's fees, in addition to any such other relief this Court deems just and proper.

### COUNT V
### HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF SECTION 1981

89. Ms. Johnson incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

90. The protections established by Title VII include "protection against a hostile work environment that is abusive to an employee on the basis of his or her sex." *Bryant v. Wilkes-Barre Hops., Co., LLC*, 146 F. Supp. 3d 628, 645 (M.D. Pa. 2015).

91. The elements of a hostile work environment under § 1981 are the same as the elements for a hostile work environment claim under Title VII. *Senador v. Zober Industries, Inc.*, No. 07-4144, 2009 WL 1152168, at *9 (E.D. Pa. Apr. 28, 2009) (citing *Ocasio v. Lehigh Valley Family Health Ctr.*, 92 Fed. Appx. 876, 879-80 (3d Cir. 2004)).

92. In order to establish a hostile work environment claim, a plaintiff must show that: "(1) she suffered intentional discrimination because of race and/or national origin; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same protected class

in that position; and (5) the existence of vicarious or respondeat superior liability." Id. (citing *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001)).

94. The United States Supreme Court has held that "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII . . . is violated." *Washington v. Martinez*, No. Civ.A. 03-3529, 2004 WL 632705, at *5 (E.D. Pa. Jan. 28, 2004) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).

94. Courts have held that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at *6 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).

95. Ms. Johnson was subjected to a racially hostile work environment created and perpetuated by Mr. Grayson, who repeatedly made racially charged remarks regarding African-Americans.

96. Mr. Grayson repeatedly compared Ms. Johnson unfavorably to her white coworker, Ms. Burleson, publicly criticized her work, and excluded her from direct communication, thereby subjecting her to ongoing humiliation and disparate treatment.

97. Ms. Johnson reported this intentional discrimination to Defendant's management and HR department, but Defendant failed to take corrective action and terminated her employment two days later.

98. Defendant permitted, condoned, and perpetuated the racially hostile work environment that Ms. Johnson was forced to endure and thereby deprived her of the same right to

make and enforce contracts as is enjoyed by white citizens, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

99. Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

100. As a direct and proximate cause of the aforementioned conduct, Ms. Johnson suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Plaintiff, Gabrielle Johnson, hereby requests this Honorable Court consider the above and grant relief in her favor and against Defendant, including an award of back pay, front pay, compensatory and punitive damages, costs and reasonable attorney's fees, in addition to any such other relief this Court deems just and proper.

### COUNT VI
### RETALIATION
### IN VIOLATION OF SECTION 1981

101. Ms. Johnson incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

102. The Third Circuit has held that retaliation claims under § 1981 are controlled by the three-step burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Canada v. Samuel Grossi & Sons*, 49 F.4th 340 (3rd Cir. 2022) (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008) (holding that § 1981 "encompasses claims of retaliation")).

103. Under the first step of that framework, a plaintiff "must establish a *prima facie* case by showing '(1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal

connection between the employee's protected activity and the employer's adverse action.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (alteration in original) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

104. Upon making these showings, the employer then, under step two, has the burden of producing evidence that "present[s] a legitimate, non-retaliatory reason for having taken the adverse action." *Daniels*, 776 F.3d at 193. If the employer meets this burden, the burden then shifts "back to the plaintiff to demonstrate that 'the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" Id. (quoting *Moore v. Cty. of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006)).

105. Ms. Johnson engaged in protected activity under Section 1981 when she reported to management and HR that Mr. Grayson made racially discriminatory comments and treated her less favorably than her white coworker.

106. Rather than addressing Ms. Johnson's concerns or taking corrective action, Defendant dismissed her complaint as unsubstantiated and took no steps to prevent further discrimination or retaliation.

107. Two days later, on April 4, 2024, Defendant terminated Ms. Johnson's employment, citing "poor performance."

108. The close temporal proximity between Ms. Johnson's protected activity and her termination, together with Defendant's failure to take remedial action or investigate her complaint in good faith, supports a strong inference of causal connection and retaliatory motive.

109. Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

110. As a direct and proximate cause of the aforementioned conduct, Ms. Johnson suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Plaintiff, Gabrielle Johnson, hereby requests this Honorable Court consider the above and grant relief in her favor and against Defendant, including an award of back pay, front pay, compensatory and punitive damages, costs and reasonable attorney's fees, in addition to any such other relief this Court deems just and proper.

**JURY TRIAL DEMANDED.**

Pursuant to the Seventh Amendment to the United States Constitution and Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Gabrielle Johnson, hereby demands a trial by jury on all issues of fact and claims for legal relief so triable as of right. Plaintiff acknowledges that certain issues, including equitable remedies such as back pay, front pay, and injunctive relief, may be determined by the Court consistent with *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311 (3d Cir. 2006) and applicable law. Plaintiff respectfully requests that a jury be empaneled to determine all factual and legal issues properly within its province, including liability, compensatory damages, and punitive damages, and that the Court determine equitable relief as appropriate.

        Respectfully submitted,

        **J.P. WARD & ASSOCIATES, LLC**

Date: November 18, 2025        By: */s/ Justin M. Bahorich*
        Justin M. Bahorich, Esq.
        Pa. I.D. No. 329207
        J.P. Ward & Associates, LLC
        The Rubicon Building
        201 South Highland Avenue
        Suite 201
        Pittsburgh, PA 15206
        jbahorich@jpward.com

        *Counsel for Plaintiff*